IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FILED JUN 3 0 2011 IN THIS OFFICE Clerk U.S. District Court Greensboro, N.C. By____

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : 1:11CR 218-1 |
| JEFFREY KEITH BOSTIC | : |

The United States Attorney charges:

INTRODUCTION

At all times relevant to this Information:

1. Armacell, LLC (Armacell) was a limited liability company whose business focused on developing, marketing, manufacturing and selling foam insulation products. Armacell's company headquarters were located in Mebane, North Carolina. Armacell sold and shipped, and intended to sell and ship, Armacell's products, in interstate and foreign commerce. Armacell had a research and production facility in Mebane, North Carolina, and twenty manufacturing plants worldwide, with $500,000,000 in global annual sales.

2. Beginning in 1993 and continuing up to January 3, 2008, the exact dates unknown, JEFFREY KEITH BOSTIC was employed at Armstrong Industries in a division which later became Armacell. JEFFREY KEITH BOSTIC worked as a chemist, plant chemist, technical team manager, technical leader, and finally, as senior research scientist for Armacell. Among other things, JEFFREY KEITH BOSTIC was responsible for Armacell's research and development (R&D) group in Mebane, North Carolina and Conover, North Carolina. In that position, JEFFREY KEITH BOSTIC gained a working knowledge of Armacell's entire product line.

3. K-FLEX USA LLC (K-FLEX) was a limited liability company, solely owned by L'Isolante, an Italian corporation that produced and sold foam insulation products. K-FLEX's business focused on elastomeric insulation products. K-FLEX's company headquarters were located in Youngsville, North Carolina. K-FLEX served as a production facility for products developed by the Italian parent company, L'Isolante. K-FLEX had no R&D department. K-FLEX employees were trained by L'Isolante, and K-FLEX president "G.G." took instructions from L'Isolante president "C.S." Sometime in the latter half of 2007, C.S. directed G.G. to recruit JEFFREY KEITH BOSTIC for employment with K-FLEX. At that time, JEFFREY KEITH BOSTIC had an employment contract with Armacell which contained a non-compete clause and non-disclosure agreement regarding Armacell information.

JEFFREY KEITH BOSTIC and G.G. began communicating in early September, 2007, via telephone and email. A number of the e-mails were sent from JEFFREY KEITH BOSTIC's Armacell-owned laptop, using his Armacell e-mail account, and also using his personal Yahoo e-mail account. The e-mail traffic included an e-mail with the subject, "Benefit comparison." JEFFREY KEITH BOSTIC and G.G. met at a Durham, North Carolina, restaurant in September, 2007, and within a month JEFFREY KEITH BOSTIC, G.G. and C.S. met at a Raleigh, North Carolina, restaurant. The latter meeting was also attended by L'Isolante's expert in charge of production processes

2

and formulas. G.G. then sent an e-mail to JEFFREY KEITH BOSTIC's Yahoo e-mail address offering JEFFREY KEITH BOSTIC employment with K-FLEX at a six-figure salary, benefits, and a potential 20% bonus related not to K-FLEX earnings but to "achievement in your area of expertise and objective ... [concerning] development on new formulation for current rubber product, EPDM, etc."

JEFFREY KEITH BOSTIC agreed to K-FLEX'S proposed terms of employment in October, 2007, agreeing to begin working for K-FLEX in January, 2008. JEFFREY KEITH BOSTIC did not immediately inform Armacell of his plans to leave that company. JEFFREY KEITH BOSTIC downloaded 1,876 files from Armacell's computers into a 'CD burning' folder on December 21, 2007. The files put in the burning folder contain data for virtually all of Armacell's product line, and were property of Armacell. Computer records then showed that a portable hard drive accessed the Armacell computer network on December 31, 2007.

JEFFREY KEITH BOSTIC resigned in January 3, 2008, three days after using the portable hard drive to copy files from Armacell. JEFFREY KEITH BOSTIC did not inform anyone at Armacell where he planned to work after resigning, and he deleted a significant amount of data from his Armacell laptop, including e-mail. JEFFREY KEITH BOSTIC's wife gave the portable hard drive to her co-worker, "J.L.," within a day of JEFFREY KEITH BOSTIC's resignation from Armacell. On January 11, 2008, JEFFREY KEITH BOSTIC made

3

reservations for Milan, Italy, for the period January 26 through February 9, 2008. While in Milan, JEFFREY KEITH BOSTIC met with C.S. and L'Isolante's chief research chemist. JEFFREY KEITH BOSTIC returned on February 3, 2008, earlier than had been planned. Within a day of his return, JEFFREY KEITH BOSTIC's wife retrieved the hard drive from J.L. This hard drive was then given to an attorney who represented K-FLEX, who then gave it to an attorney from Armacell, who then gave it to the Federal Bureau of Investigation. The hard drive contained 7,000-12,000 Armacell files, all taken without authorization.

4. Armacell had developed trade secrets, acquired from proprietary research, methods and procedures related to insulation and technical foam products and applications that were technical in nature, derived independent commercial value from not being known or readily ascertainable through proper means by the public and were the subject of reasonable means to maintain their secrecy (collectively and separately referred to as the "Trade Secret Information.").

Armacell's Trade Secret Information includes its: (a) tube line process; (b) sheet line process; (c) raw material substitution data; (d) automated packaging process for the tube line; (e) single pass mixing process for compound production; (f) specifications for costs and testing procedures for raw materials; (g) UV product protection process; (h) vacuum extrusion technology for tube

4

production; (i) vacuum extrusion technology for sheet production; (j) modernized technical foam sheet line technology; (k) automated mixing technology; (l) elastomeric self seal and lap seal processes; (m) alternative polymer systems processes; (n) crushed foam technology; (o) thin gauge technology; (p) granulate technology; (q) AP formulation; (r) AP 2" sheet formulation; (s) Aislaflex formulation; (t) NH product recipe; (u) APR wall padding technology; (v) NC1 production techniques and recipes; and (w) WMA production techniques and recipes.

Armacell's Trade Secret Information contained formulations for its EPDM product line. EPDM (ethylene propylene diene methylene) is a polymer used by Armacell to manufacture insulation products. Prior to JEFFREY KEITH BOSTIC working for K-FLEX, neither L'Isolante nor K-FLEX produced or distributed an EPDM industrial insulation product line, and in fact advertised against the use of EPDM. After JEFFREY KEITH BOSTIC began working for K-FLEX in January, 2008, K-FLEX began producing EPDM industrial insulation products.

    5. The Trade Secret Information was considered trade secret information by Armacell and was protected by Armacell as confidential and proprietary information. Armacell used a number of reasonable measures to protect its trade secrets and its confidential proprietary information, including the following:

    a. Entry to Armacell's Mebane facility was controlled by

5

password-protected locks or entry while accompanied by authorized Armacell employees only. The facility itself was not open to the public. Within Armacell's Mebane facility, Armacell's R&D team members had password-protected access to Armacell's computer database. This database was not publicly accessible. Only selected Armacell employees had authorization to access the database. Armacell R&D team members were subject to non-disclosure agreements regarding the Trade Secret Information. In this database, the R&D team stored recipes, test data, processes and procedures regarding the development and production of all product lines.

EXECUTION

Between on or about October 8, 2007, and on or about January 3, 2008, the exact dates to the Grand Jurors unknown, in the County of Orange, in the Middle District of North Carolina, and elsewhere, JEFFREY KEITH BOSTIC, with the intent to convert a trade secret to the economic benefit of someone other than Armacell, the owner thereof, and intending and knowing that the offense would injure Armacell, the owner or such trade secret, did knowingly steal, and without authorization appropriate, take, carry away and conceal, and by fraud, artifice and deception obtain information, and attempt to do so, Trade Secret Information as described above, owned by Armacell, which was related to and included in a product that was produced for and placed in interstate and foreign

6

commerce.

All in violation of Title 18, United States Code, Sections 1832(a)(1), 1832(a)(4), and 2.

_____
ANAND P. RAMASWAMY
ASSISTANT UNITED STATES ATTORNEY

_____
RIPLEY RAND
UNITED STATES ATTORNEY